**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-_____-___-___

LISA MARES,

Plaintiff,

v.

COLORADO COALITION FOR THE HOMELESS,

Defendant.

---

PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL

---

Plaintiff, Lisa Mares, by and through her attorney, Ralph Lamar, for this her Complaint, respectfully alleges as follows:

**I.**     **NATURE OF THE CASE**

1.     This employment discrimination action is brought against Defendant Colorado Coalition for the Homeless, by Plaintiff Lisa Mares for equitable relief and monetary damages to redress the deprivation of civil rights secured to her by Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2000e *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2602, *et seq.*

Specifically, she alleges that Defendant terminated her employment as a Case Manager because of her medical condition which violates the ADA and the Rehabilitation Act and that it denied her leave under the FMLA in violation of that statute. Ms. Mares alleges that the Defendant's actions caused her mental distress and humiliation, and loss of employment and compensation. She seeks back pay, reinstatement or front pay, compensatory damages, liquidated damages, and attorneys' fees and costs of this action.

1

## II.   JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the claims under 28 U.S.C. §§ 1331, because they arise under the laws of the United States.

3.      Venue is proper in this judicial District under 28 U.S.C. § 1391(b),(c) and 42 U.S.C. § 2000e-5(f)(3), because Defendant has offices, conducts business, and can be found in this District, and the causes of action arose and the acts and omissions complained of occurred herein.

## III.   PARTIES

4.      Plaintiff Lisa Mares is a citizen of the U.S. currently residing in Lakewood, CO and is subject to the jurisdiction of this court.

5.      Defendant was the employer who terminated plaintiff's employment.

## IV.   JURISDICTION

6.      At all relevant times during plaintiff's employment by Defendant, it employed more than 14 persons and is therefore subject to the terms of the ADA.  Additionally, during all relevant times it received federal funds and/or the department in which plaintiff had worked was a program or activity for which federal funds were received, and therefore Defendant is subject to the provisions of the Rehab Act and is subject to the jurisdiction of this court under that statute.  Defendant also had 50 or more employees at the location where plaintiff worked at all relevant times or within 75 miles of her location and is therefore subject to the jurisdiction of this court pursuant to the Family and Medical Leave Act.  Defendant's offices are located at 2111 Champa Street, in Denver, CO.  Defendant is therefore subject to the jurisdiction of this court.

## V.   STATEMENT OF FACTS

7.       Plaintiff was hired as a Case Manager for Defendant on August 28, 2006.

8.      During the course of her employment Mares' job performance was excellent.

9.      As a result of her performance Mares was promoted to the position of Senior Case Manager/Hearings Representative on October 7, 2011.

10.     In the later summer (August) of 2017 Plaintiff was physically assaulted several times by her then fiancé, ultimately concluding with a criminal charge of assault being made against him on October 26.

11.     As a result of the assaults she missed time from work.

12.     Each time she had to miss work plaintiff told her supervisor (Heather Beck) she would be out and the reason for her absence.

13.     Mares was not disciplined for those absences.

14.     Although plaintiff recovered from her physical injuries, as a result of those incidents she suffers from PTSD.

15.     Plaintiff was diagnosed with PTSD on November 9, 2017.

16.     Mares began to suffer the psychological effects of the PTSD shortly after the incidents.

17.     As a result of her PTSD plaintiff experiences the following:

- Recurrent, involuntary, and intrusive distressing memories of the trauma event;

- Recurring, distressing dreams about the trauma event;

- Dissociative reactions, i.e. flashbacks related to the trauma event;

- Intense or prolonged  psychological distress at exposure to internal or external cues that symbolize aspects of the trauma event;

- Marked physiological reactions to internal or external cues that symbolize aspects of the trauma event;

- Avoidance of, or efforts to avoid, distressing memories, thoughts, or feelings related to aspects of trauma event;

- Avoidance of, or efforts to avoid, external reminders (people, places, activities, objects, and/or situations that arouse distressing memories, thoughts, or feelings closely associated with the trauma event);

- Persistent and exaggerated negative beliefs or expectations about oneself, others, or the  world;

- Persistent, distorted cognitions about the cause or consequences of the trauma event that lead the individual to blame him/herself or  others;

- Persistent negative emotional state, i.e. fear, guilt, horror, shame, etc.;

- Markedly diminished interest or participation in significant activities;

- Feelings of detachment or estrangement from others;

- Persistent inability to experience positive emotions;

- Irritable behavior or angry outbursts with little or no  provocation;

- Hyper vigilance;

- Exaggerated startle response;

- Problems with concentration; and

- Sleep disturbances.

18.    Plaintiff's PTSD, *in its untreated state*, as per the dictates of the Americans with Disabilities Act Amendments Act (ADAAA), constitutes a disability under the ADAAA (and the Rehab Act) because her symptoms cause her to suffer substantial limitations in the major life activities of sleeping, engaging in social interactions, and occupational or work activities, among others.

19.    Ms. Mares' condition constituted a serious health condition as defined by the Family and Medical Leave Act, 29 U.S.C. §2612(a)(1), (hereafter "FMLA").

20.    As of October 1, 2017 plaintiff had worked in excess of 1250 hours during the preceding calendar year.

21.    Plaintiff's resulting absences from work from October 1, 2017, on qualified for protection under the Family Medical Leave Act, 29 U.S.C. §2602 *et seq.*

22.    Mares requested FMLA leave through Human Resources (HR) on October 24, 2017.

23.    Plaintiff was told that she needed to have her treating professional fill out the necessary form for her to be approved for FMLA leave.

24.    She was seen by her doctor on November 9, 2017.

25.    On November 10, 2017, HR received plaintiff's FMLA certification form from Mares' treating physician.

26.    An approval designation form was sent to plaintiff from HR the same day.

27.    Plaintiff's certification document indicated she was incapacitated due to her medical condition between October 1, 2017 and October 25, 2017, during which time she required medical appointments 1-2 times per week, and that going forward, Ms. Mares may experience flare-ups 4-6 times per year with an estimated duration of 10 days per episode.

5

28.     The provider certification document was signed on November 9, 2017 which was also the date the provider saw Mares for the stated condition.

29.     The provider suggested a reduced work schedule of 6-8 hours per day, 5 days per week from "now through 11/9/2018."

30.     Mares' supervisor spoke with plaintiff on November 14, 2017 in which she stated that she had expected Mares to return to work the previous Friday (the 10th) and asked for further documentation from her provider to support her absences.

31.     Mares said she understood the request and would contact her medical provider for documentation.

32.     Mares spoke for 20 minutes by telephone with her supervisor on November 16, 2017.

33.     Mares explained that she was not feeling well enough to return to work yet and hoped that she would be able to do so in the near future.

34.     Within the next couple of days Jennifer Perlman, the Director of Trauma Informed Care for Defendant (and plaintiff's prior supervisor), contacted Mares' parents to say that she was worried about plaintiff.

35.     Perlman went to the Mares' home and then they went together to plaintiff's apartment to check up on her.

36.     Plaintiff was not doing very well emotionally and her parents ended up taking her back to their home.  Perlman left after making sure that Mares' parents were going to care for her.

37.     Plaintiff began to get better while living with her parents and she was able to return to work on November 27, 2017.

38.     That morning as Beck walked past Mares' office she called Mares back to her office and said to her "You can't be here because you are on administrative leave."

39.     Mares was surprised to hear that she was on administrative leave.  Beck claimed she did not know the basis for Mares being placed on administrative leave but that if Louise Boris (CCH' Vice President) knew that Mares was at work Beck would lose her job.

40.     Beck told Mares that Boris was in Canada and would return to work the next day and that Mares had to go home and that she (Beck) would call Mares the next day to see about setting up a meeting with Boris.

41.     Before she went to the meeting on the 28th Mares stopped in to see Bethany Davis, the head of HR for Defendant, to say hi and ask what was going on with the meeting she had been called to attend.  Mares said she hoped she wasn't going to be fired.  Davis said "no that wasn't what was going on" but she admitted that she didn't know the reason for the meeting.

42.     Mares met with Beck and Boris in the office on November 28, 2017 and during the meeting, plaintiff's employment was terminated for excessive unexcused absences.

43.     Mares' absences from work had been the result of her PTSD and she had communicated that fact with her supervisor.

44.     Plaintiff was not required by law to provide a brand new certification just days after having seen her physician who had just stated that she would experience episodes up to 6 times a year that could last for ten days.

45.     Asking for a recertification so soon after she was certified is contrary to the express rules of the FMLA, and as well, defeats the purpose of the reasonable accommodation provisions of the ADA.

## COUNT I

### VIOLATION OF THE FMLA

46.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 46 as though fully set forth herein.

47.     Plaintiff is a person with a serious health condition pursuant to the FMLA who worked in excess of 1250 hours during the calendar year preceding October 1, 2017.

48.     Defendant is a covered employer under the Act.

49.     Plaintiff was entitled to FMLA leave and had been certified by her treating physician as of November 9, 2017.

50.     By terminating Ms. Mares' employment without allowing her the full twelve weeks of leave that is available under the FMLA Defendant violated Ms. Mares' rights under the FMLA.

51.     As a direct result of Defendant's willful, and unlawful, actions in violation of the FMLA, plaintiff has sustained a loss of earnings, plus the value of the aforementioned benefits, plus loss of earning power, plus loss of back pay and front pay and interest due thereon.

52.     Defendant's actions were intentional, and plaintiff is therefore entitled to receive liquidated damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)     Awarding her lost wages, including lost fringe benefits;

(b)     Awarding her front pay or ordering reinstatement;

(c)     Award her liquidated damages;

(d)     Awarding her the costs of this action, together with reasonable attorneys' fees under 29 U.S.C. § 2601 et seq.; and

(e)     granting such other relief as the Court deems necessary and appropriate.

## COUNT II

## SECTION 504 REHABILITATION ACT VIOLATION – FAILURE TO ACCOMMODATE AND TERMINATION ON THE BASIS OF A DISABILITY

53.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 52 as though set forth fully herein.

54.     Plaintiff was a qualified individual with a disability in that she was able to perform the essential functions of her job as a Senior Case Manager with a reasonable accommodation of leave as she could perform her duties in the near future at the time of her administrative leave and then termination.

55.     By refusing to provide her with an accommodation of time off Defendant fired plaintiff because of her disability.

56.     The unlawful action of defendant in terminating plaintiff because of her disability constitutes an intentional violation of Section 504 of the Rehabilitation Act.

57.     Pursuant to the 10th Circuit's holding in *Punt v. Kelly Services*, 862 F.3d 1040, 1050-51 (10th Cir. 2017), because Mares was not accommodated and then fired because she purportedly had violated the Defendant's attendance policy this case involves direct evidence of discrimination and does not involve pretext or the *McDonnell Douglas* burden shifting paradigm.

58.     As a direct result of defendant's unlawful actions in violation of the Rehab Act, plaintiff has suffered emotional pain and distress, and has sustained a loss of earnings and benefits, and a loss of front pay.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)     Awarding lost wages in the form of back pay, including lost fringe benefits;

(b)     Awarding compensatory damages;

(c)     Ordering reinstatement or, in the alternative, issuing an award of front pay;

(d)     Awarding the costs of this action, together with reasonable attorneys' fees; and

(e)     granting such other relief as the Court deems necessary and appropriate.

<u>COUNT III</u>

**ADA VIOLATION – FAILURE TO ACCOMMODATE AND TERMINATION ON THE BASIS OF A DISABILITY**

59.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 58 as though set forth fully herein.

60.     Plaintiff was a qualified individual with a disability in that she was able to perform the essential functions of her job as a Senior Case Manager with a reasonable accommodation of leave as she could perform her duties in the near future at the time of her administrative leave and then termination.

61.     By refusing to provide her with an accommodation of time off Defendant fired plaintiff because of her disability.

62.     The unlawful action of defendant in terminating plaintiff because of her disability constitutes an intentional violation of the ADA (As Amended).

63.     Pursuant to the 10th Circuit's holding in *Punt v. Kelly Services*, 862 F.3d 1040, 1050-51 (10th Cir. 2017), because Mares was not accommodated and then fired because she purportedly had violated the Defendant's attendance policy this case involves direct evidence of discrimination and does not involve pretext or the *McDonnell Douglas* burden

shifting paradigm.

64.     As a direct result of defendant's unlawful actions in violation of the ADA (As Amended), plaintiff has suffered emotional pain and distress, and has sustained a loss of earnings and benefits, and a loss of front pay.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)     Awarding lost wages in the form of back pay, including lost fringe benefits;

(b)     Awarding compensatory damages;

(c)     Ordering reinstatement or, in the alternative, issuing an award of front pay;

(d)     Awarding the costs of this action, together with reasonable attorneys' fees; and

(e)     granting such other relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated this 5th day of November, 2019.

Respectfully submitted,

By:     *s/Ralph E. Lamar, Esq.*
        Ralph E. Lamar
        CO Attorney I.D. No. 44123
        8515 Braun Loop
        Arvada, CO 80005
        (303) 345-3600
        ralphlamar@ymail.com

        Attorney for Plaintiff