IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03144-MEH

LISA MARES, an individual,

      Plaintiff,

v.

THE COLORADO COALITION FOR THE HOMELESS, a Colorado nonprofit
organization,

      Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Plaintiff was a case manager for the Colorado Coalition for the Homeless (CCH), with whom she was employed for eleven years.  CCH terminated her employment in November 2017, the circumstances of which are the subject this lawsuit under the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973 (Rehab Act), and the Family Medical Leave Act (FMLA).  Plaintiff contends that CCH terminated her because of her mental health (specifically, her post-traumatic stress disorder (PTSD)).  CCH's stated reason was Plaintiff's abandonment of her job (and concomitant violation of CCH's attendance policy).  CCH has moved for summary judgment on all claims. ECF 26.  These include wrongful termination under the FMLA (later clarified by Plaintiff as an FMLA interference claim, ECF 19 at 1); failure to accommodate and

wrongful termination under the Rehab Act; and failure to accommodate and wrongful termination under the ADA.[1]

## **FINDINGS OF FACT**

The Court makes the following findings of fact viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.  In some instances, I have quoted directly from the evidentiary record when a party characterizes the evidence in a way the opposing party disputes.  Further, at times Plaintiff denies a fact without any citation to evidence, which is not a proper denial.  Finally, in her response brief Plaintiff provides additional material undisputed facts, and I have incorporated those that I find relevant to the issues before me.  The facts below are numbered consistent with Defendant's Motion for Summary Judgment (containing the citations to the record), and Plaintiff's additional facts are contained within the relevant fact paragraph of the Motion.

I must address one other matter before reciting the facts.  The parties dispute whether CCH had knowledge of Plaintiff's diagnosis of PTSD.  I do not believe this is a material fact, because CCH had notice Plaintiff was suffering from a condition, the effects of which were discussed by her psychiatrist as noted below.  Associating a specific diagnosis with her symptoms and the psychiatrist's prognosis does not impact what occurred between the parties after Plaintiff was cleared to work.

1.      CCH hired Plaintiff as a case manager on August 28, 2006.  At all relevant times her performance met or exceeded expectations.

2.      In 2014, Plaintiff took FMLA leave to care for her sick mother.

---

[1] Plaintiff did not articulate an FMLA interference claim in her Complaint, but the Court will accept the parties' understanding (through their briefing) that this is Plaintiff's theory.

3.      Plaintiff knew CCH had an FMLA policy.

4.      In 2014, Heather Beck became the Director of Outreach and Engagement Services at CCH and began supervising Plaintiff.

5.      Robin Cottrell was the Benefits and Compensation Manager at CCH.

6.      Ms. Cottrell handled the FMLA benefits for CCH employees.

7.      CCH's attendance policy states that if an employee cannot report to work by her assigned starting time, she must notify her supervisor as soon as practicable, but no later than one hour prior to her assigned starting time.

8.      The only exception to CCH's advance notification policy is for an unforeseen emergency.

9.      The CCH attendance policy further states that an employee who does not report to work by her assigned starting time and does not later present a valid reason for not reporting within a reasonable time period is considered a "no show/no call" for that day.

10.     Because of the disruption caused by no show/no calls, even one no show/no call violates the CCH attendance policy, and the offending employee may be subject to disciplinary action, up to and including termination of employment.

11.     The CCH attendance policy further states that employees who are excessively tardy and/or absent may be subject to disciplinary action, up to and including termination of employment.

12.     CCH's sick leave policy provides that if the need for sick leave is foreseeable, employees must schedule leave with as much notice as possible. Without sufficient notice, supervisors may deny employees' use of sick leave.

13.     CCH's FMLA policy states that when the need for leave is foreseeable, employees must notify their supervisor and human resources at least thirty calendar days prior to the requested start of leave.

14.     When the need for FMLA leave is not foreseeable, employees must provide as much notice as practicable and comply with their supervisors' call-in instructions.

15.     CCH's FMLA policy also provides that "the employee must provide sufficient information so [CCH] can determine if requested leave qualifies as FMLA leave. This information must include anticipated timing and duration of leave and . . . [the] employee must also inform [CCH] if requested leave is for a reason for which FMLA leave was previously taken or certified."

16.     Attendance was an essential functional of Plaintiff's job.  Plaintiff was the only person at CCH who performed her particular work functions.

17.     Plaintiff acknowledged that attendance was critical to her continued employment.

18.     Plaintiff was required to inform Ms. Beck if she was going to be late or absent from work for any reason.

19.     Beginning in August 2017, Plaintiff began using paid time off at an average rate of four or more times per bi-monthly pay period.

20.     By October 9, 2017, Plaintiff had exhausted her paid time off and began using unpaid time off.  Starting October 13, 2017, Plaintiff never worked again before her termination on November 28, 2017.

21.     On October 24, 2017, Plaintiff requested leave under the FMLA.

22.     At least through November 9, 2017, CCH accommodated Plaintiff's request for time off, worked with her to ensure she received FMLA leave, and informed her that she must have her FMLA certification to human resources no later than November 10, 2017.

23.     On November 9, 2017, Plaintiff's psychiatrist treated her for "relapse[] into trauma," then created and faxed an FMLA certification to CCH.  The FMLA certification stated that Plaintiff would need to use leave occasionally in the future, related to her condition.

24.     Plaintiff's FMLA certification stated that she was incapacitated and that she had stopped unidentified medications, had panic attacks, could not sleep, and ultimately had a seizure. It predicted flare-ups four to six times per year with an estimated duration of several weeks per episode.  It did not mention PTSD.  The record does not indicate that Plaintiff ever provided any documentation of a diagnosis of PTSD.  However, prior to the time period at issue here, when Dr. Jennifer Perlman (Coordinator of Trauma-Informed Care for CCH) was Plaintiff's supervisor, she knew of Plaintiff's diagnosis of PTSD. The record contains no evidence Dr. Perlman participated in the termination decision.

25.     On November 10, 2017, CCH sent Plaintiff an FMLA approval designation.

26.     The November 9, 2017 FMLA certification form, in response to question numbered "5", provided "beginning and ending dates for [any] period of incapacity" of October 1 – October 25, 2017.  In response to question numbered "6", the FMLA certification form suggested a "reduced" work schedule of six to eight hour a day, five days per week, from "now through 11/9/2018."

27.     Other that the specific work schedule, Plaintiff's treating psychiatrist gave no other restrictions on the FMLA certification form, although the psychiatrist answered the following questions as indicated (paraphrasing):  "1" – the condition will last "1-2 weeks at a time, ongoing, exacerbations 4-6x/year"; "3" – Plaintiff is able to perform her job functions; "4" – Plaintiff is being restabilized on medications; and "7" – Plaintiff's condition will "cause episodic flare-ups

periodically preventing [her] from performing [her] job functions," during which flare-ups it will be "medically necessary for [her] to be absent from work."

28.    Plaintiff was not concerned about returning to work the day after seeing her medical provider on November 9, 2017 and was just relieved to have the certification completed.

29.    On November 10, 2017, Ms. Cottrell informed Plaintiff her "FMLA time was approved," and her "FMLA covered [her] through Thursday, 11/09/2017."[2]

30.    Although the FMLA certification form stated that Plaintiff's "incapacitation" ended on October 25, 2017, she did not return to work on October 26, 2017, and CCH did not discipline her at that time but put her on extended leave through November 10, 2017.

33.    Plaintiff did not return to work on November 10, 2017 and continued to be absent until her termination; the only time she was ever back in the workplace was on November 27, 2017, when she showed up unannounced (while on administrative leave) and was sent home.

34.    On November 8, 2017 Plaintiff texted Ms. Beck informing her that she would be back in the office on Monday, November 13, 2017.

35.    However, Plaintiff did not return to work on that date.

36.    By 10:00 a.m. on Monday, November 13, 2017 Plaintiff still had not come to work. Ms. Beck texted Plaintiff on that date asking whether she would be in the office that day and querying whether her FMLA ended the previous Thursday, November 9, 2017.

37.    Plaintiff responded to Ms. Beck's text stating that she would be back in the office on November 14, 2017.

---

[2] The record is unclear concerning Plaintiff's status on November 10, 2017. CCH's communications to Plaintiff indicate approval for FMLA leave through November 9, but her timecard, submitted by CCH, shows FMLA leave for November 10 as well. The difference is not dispositive for purposes of this Order.

38.    However, Plaintiff did not return to work on November 14, 2017.

39.    On the morning of November 14, 2017, Ms. Cottrell emailed Ms. Beck confirming that Plaintiff was expected back to work on November 10, 2017 according to her FMLA certification.

40.    Ms. Cottrell further explained in the November 14, 2017 email that Plaintiff had left her a voicemail, "letting me know she was feeling better, and thanking me for handling the paperwork . . . ."

41.    On November 14, 2017, Ms. Beck called Plaintiff, informing her that her continued absences were not excused by her FMLA certification, she was expected to return to work on November 10, 2017, and if she needed further FMLA leave she would have to provide documentation to support her absences.

42.    On November 14, 2017, Plaintiff understood Ms. Beck's request that "further documentation was needed . . . to support her absences," knew she needed to contact her psychiatrist for documentation, and sent Ms. Beck a text message stating that "whatever paperwork is needed, it will be submitted."

43.    The record before me contains no evidence that Plaintiff ever asked her psychiatrist for any documentation beyond the FMLA certification dated November 9, 2017.

44.    From November 9, 2017 to her termination, Plaintiff neither spoke with her psychiatrist by telephone nor saw her in person.

45.    Plaintiff did not return to work on November 14, 2017 or November 15, 2017.

46.    On November 15, 2017, Plaintiff texted Ms. Beck and stated that she would be in the office on November 16, 2017.

47.     On November 15, 2017, Ms. Beck reminded Plaintiff she still needed to have her psychiatrist submit evidence justifying an extension of FMLA leave through that date.

48.     Despite her expressed intention to return to work, Plaintiff did not return to work on November 16, 2017.

49.     On November 16, 2017, Ms. Beck called Plaintiff and informed her that because she had not returned to work after her doctor released her to do so and since she had provided no explanation for her continued absences, she was being placed on administrative leave (a form of official discipline), effective November 17, 2017.

50.     Plaintiff has testified that she has no memory of the conversation with Ms. Beck on November 16, 2017.

51.     Plaintiff has testified she did not know that she had been placed on administrative leave.

52.     Despite being on administrative leave, Plaintiff returned to work on November 27, 2017.

53.     Plaintiff did not communicate with her supervisor during the inclusive period of November 17–26, 2017.

54.     Beyond the November 9, 2017 FMLA certification, Plaintiff did not submit any medical documentation to explain her continued absences from work nor did she initiate any communications to that effect.

54.     On November 18, 2017, Dr. Perlman, being aware that CCH's management team was concerned about Plaintiff and having had a conversation with Plaintiff's parents, went to Plaintiff's home with her parents for a welfare check.  Plaintiff's home was in disarray (including dog feces on the floor, overturned furniture), and Plaintiff was not very coherent.

55.     On November 28, 2017, CCH terminated Plaintiff's employment.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an affirmative defense—his[, her, or its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).  "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment."  *Id.* at 1154 (quoting 11 Moore's Federal Practice, § 56.40[1][c] (Matthew Bender 3d Ed. 2015)).  Only evidence for which the content and substance are admissible may be considered when ruling on a motion for summary judgment.  *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S.

at 322.  That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); see also *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'"  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting Celotex, 477 U.S. at 324); *see Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) ("On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings  and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment.") (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)).  "The court views the record and draws all inferences in the light most favorable to the non-moving party."  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

### I.   FMLA Interference Claim

"The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the Act. 29 U.S.C. § 2615(a)."  *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012).  To establish a claim of FMLA interference, an employee must show that (1) she was entitled to FMLA leave; (2) some adverse action by the employer interfered with her right to take FMLA leave; and (3) the employer's action

was related to the exercise or attempted exercise of her FMLA rights.  *Campbell v. Gambro Healthcare, Inc*., 478 F.3d 1282, 1287 (10th Cir. 2007).  An interference claim is judged under a "strict liability" standard in that the Plaintiff need not provide evidence of a discriminatory or retaliatory intent, unlike a retaliation claim, *Utter v. Colclazier*, 714 F. App'x 872, 881 (10th Cir. 2017), thus, there is no *McDonnell Douglas* burden shifting analysis.  *Brown*, 700 F.3d at 1227. The question I must address on summary judgment is "not whether a reasonable jury could find in favor of [CCH], but rather whether the evidence is so one-sided that submission to a jury is not required."  *Id.*

I will analyze the second and third elements of an FMLA interference claim.  As for the first element, the record establishes that Plaintiff was, in a sense, "preapproved" for FMLA leave based on her psychiatrist's statements concerning ongoing and regular occurrences of incapacitation, during which she could not work.  For purposes of summary judgment, I will assume that, if properly requested, she could have received FMLA leave for her absences beyond November 9, 2017.

Concerning whether the employer interfered with Plaintiff's access to FMLA leave and whether any interference was related to her attempted exercise of the right, I must examine several issues.  First, did she attempt to exercise her FMLA rights?  Generally, addressing the obligation of an employee to inform her employer of the need for FMLA leave, "[w]hen the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303.  Some courts require employee notice to be established as part of the plaintiff's initial burden.  *E.g., Graziadio v. Culinary Inst. of Am*., 817 F.3d 415, 424 (2d Cir. 2016).  The Tenth Circuit has imposed no such explicit requirement in Plaintiff's initial burden, but based on the

FMLA's federal regulations, some notice is both explicitly and logically necessary.  *Crowell v. Denver Health & Hosp. Auth.*, 572 F. App'x 650, 653 (10th Cir. 2014) (recognizing notice requirement of Section 825.303).  This Circuit does require at least some expression by an employee of the need for FMLA leave.  *Id.* ("In requesting leave, employees need not expressly assert rights under the FMLA or even mention the FMLA but may only state that leave is needed.").  "'The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.'"  *Id.* (quoting *Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973, 977 (5th Cir.1998)).  The employee "must explain the reasons for the needed leave."  *Crowell*, 572 F. App'x at 653.

Second, when an employee has a recurring need to take FMLA leave, the employer may require the employee to "obtain subsequent recertifications on a reasonable basis."  29 U.S.C. § 2613(e).  *See Dry v. The Boeing Co.*, 92 F. App'x 675, 677 (10th Cir. 2004).  Then, the employee "must provide the medical certification 'in a timely manner.'"  *Id.* (quoting the regulations).  An employee is required to comply with the employer's notice and procedural requirements for taking FMLA leave.  *Crowell*, 572 F. App'x at 653.

The facts before me are similar to *Dry*.  There, the employee missed weeks of work, did not provide medical documentation of the need for leave despite the employer's request, and was terminated for abandoning his position.  Here, regardless of the FMLA certification (which reasonably could be interpreted as clearing Plaintiff for work commencing November 10, 2017), Plaintiff knew CCH expected her back to work in mid-November, knew CCH was requiring medical documentation to support continued FMLA leave (a right CCH had under the law and which Plaintiff committed to provide), and kept promising (sometimes daily) CCH that her return was imminent, while several weeks passed with no word from Plaintiff and no request for leave.

Even through the date of her termination, Plaintiff never provided medical documentation of her need for FMLA and, indeed, never even notified CCH of her desire for any type of leave.

Plaintiff appears to argue that because her need was self-evident based on her condition and CCH's knowledge thereof (including Dr. Perlman's wellness check visit), the law's notice requirement was met. This sets too high a burden for an employer under the law.  The FMLA appears to require that an employee take some cognizable step toward requesting leave; Plaintiff took no such step here.  *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1009 (10th Cir. 2011) (affirming summary judgment for employer; termination of the plaintiff's employment for failure to report continuing absences was not FMLA when plaintiff failed to make contact with employer after certified period of FMLA leave ended).

Plaintiff also argues that CCH failed to inform her of her need to request FMLA leave.  I disagree.  Ms. Beck informed Plaintiff several times of her need to submit *something* to explain her absences after November 9, 2017, and Plaintiff acknowledged her obligation.  While I understand PTSD can be incapacitating, Plaintiff does not argue it rendered her incompetent to make decisions.  She continued to engage in intelligent conversations by text and email.  *See* Response at 34 ("Mares and Beck sent 43 texts to each other, and they placed 11 calls to each other from October 23 to November 15.").  After being placed on administrative leave, Plaintiff went completely silent for the ten days preceding her unauthorized presence in the office on November 27, 2017.  Prior to putting her on administrative leave, CCH engaged in appropriate efforts to assist Plaintiff in requesting leave.

Furthermore, although Plaintiff's psychiatrist notified CCH that there would be occasions in the future when Plaintiff would be incapacitated, and Plaintiff's condition had been approved as a basis for future FMLA leave, as of October 25, 2017, he stated that any then-existing

incapacitation had ended and, as of November 10, 2017, Plaintiff was able to perform her job functions. "Where an employer receives a physician's certification that indicates that an employee's serious health condition does not require her to miss work, the employer may rely on that certification until the employee provides a contrary medical opinion." *Crowell*, 572 F. App'x at 654. Indeed, Plaintiff never provided any medical documentation of incapacity for any period after November 9, 2017. *See id.* at 656 ("Importantly, also absent from the record is a medical certification supporting that [plaintiff] was unable to perform the functions of her job during her June 5–6 shift due to a serious health condition."). "[A]n employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, *even if the absences that the employee failed to report were protected by the FMLA*." *Twigg*, 659 F.3d at 1008–09 (emphasis in original).

In addition to the failure to meet the second element of her claim, Plaintiff has not established that "the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Id.* at 1009 ("[E]ven if the FMLA entitles an employee to be absent from work, the employee's violation of a notice-of-absence policy can constitute "'[a] reason for dismissal that is unrelated to a request for an FMLA leave.'") (citation omitted). CCH had a facially reasonable basis for the termination: violation of the entity's attendance policy. *See id.* at 1009 ("Formal notice-of-absence policies serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations."). By the time of her termination, Plaintiff had been absent from work for over six weeks (with only the period after November 10 constituting leave without approval). In fact, her treating psychiatrist stated that her period of incapacity began on October 1, nearly two

months prior to November 28, 2017, although the record is unclear as to Plaintiff's work status from October 1 – October 13, 2017.

As noted above, Plaintiff need not prove an *intent* to violate her FMLA rights.  The inquiry is whether CCH "terminated her because it sincerely, even if mistakenly, believed" she violated the leave policy.  *Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1134 (10th Cir. 2014).  If "there is no evidence to suggest [CCH] fabricated these or any of the other reasons given for Plaintiff's termination in order to justify an attempt to interfere with Plaintiff's FMLA leave," *id.*, Plaintiff has not met her burden.  In other words, "summary judgment for [an] employer is warranted [here], when there is no genuine dispute as to any material fact regarding alternative reasons for termination." *Balding v. Sunbelt Steel Texas, Inc.*, 718 F. App'x 742, 746 (10th Cir.), *cert. denied*, 139 S. Ct. 210 (2018).  I find no material evidence of any other reason for the termination except violation of the CCH attendance policy.

The evidence here is so one-sided that a jury cannot find for Plaintiff.  Therefore, the claim for FMLA interference must be dismissed.

## II.   ADA/Rehab Act Failure to Accommodate Claim[3]

For a failure-to-accommodate claim, a plaintiff need not demonstrate discriminatory intent. Rather, "any failure to provide reasonable accommodations for a disability is necessarily 'because of a disability'—the accommodations are only deemed reasonable (and, thus, required) if they are needed because of the disability—and no proof of a particularized discriminatory animus is eligible." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017) (quoting *Higgins v. New*

---

[3] The ADA and the Rehab Act, both of which Plaintiff asserts here, impose the same obligations on employers, the definition of disability used by both laws is effectively the same, and courts use the same standards in analyzing ADA and Rehab Act claims. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010).

*Balance Athletic Shoe, Inc*., 194 F.3d 252, 264 (1st Cir. 1999)) (emphasis added). Thus, at summary judgment, "the employee must make an initial showing that '(1) she is disabled; (2) she is "otherwise qualified"; and (3) she requested a plausibly reasonable accommodation.'" *Id.* at 1050 (quoting *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012)). "Once the employee produces evidence sufficient to make a facial showing on . . . her prima facie case, the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id.* (citing *Smith v. Midland Brake, Inc*., 180 F.3d 1154, 1179 (10th Cir. 1999)). "If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of . . . her prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.* I accept that Plaintiff is disabled for purposes of summary judgment.

CCH argues Plaintiff was not "otherwise qualified" because she did not timely return to work. I find on this record that Plaintiff has not established a material fact issue concerning her ability to comply with CCH's attendance policy.  A reasonable jury could not find that, based on Plaintiff's recent leave history and prospects for future attendance, she was "otherwise qualified." *Punt*, 862 F.3d at 1051 ("Physical attendance in the workplace is itself an essential function of most jobs . . . ."). *See Bethscheider v. Westar Energy*, 820 F. App'x 749 (10th Cir. 2020) (affirming summary judgment for employer on issue of "otherwise qualified" based on employee missing all or part of twelve workdays, five of which were missed due to migraines, over approximately four month period); *Murphy v. Samson Res. Co.*, 525 F. App'x 703, 705 (10th Cir. 2013) (affirming

summary judgment on issue of "otherwise qualified" where doctor's certification excused employee from until November 20, 2008; employee promised new certification for leave taken after that date; employee did not submit any updated doctor's certification by December 1, 2008; and employer terminated her for job abandonment on that date).

The *Murphy* court's analysis is instructive. There, the employee provided no firm indication of what her attendance would be in the future. The court analyzed the case as follows:

> The district court stated that a leave of absence is not a reasonable accommodation where, as here, an employee continues to seek leave and it is uncertain if or when she will be able to return to work. We agree. An allowance of time for medical care or treatment may constitute a reasonable accommodation. *See Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir.2000), *overruled on other grounds by Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S. Ct. 955, 148 L.Ed.2d 866 (2001). But an employee must provide an expected duration of the impairment. *Id.* at 1130. "Without an expected duration of an impairment, an employer cannot determine whether an employee will be able to perform the essential functions of the job in the near future and therefore whether the leave request is a 'reasonable' accommodation." *Id.* Murphy failed to present evidence of the expected duration of her impairment.

525 F. App'x at 707. That analysis applies to the facts of the present case.

In arguing that Plaintiff *was* a qualified individual, Plaintiff cites to *Hwang v. Kansas State Univ.*, 753 F.3d 1159 (10th Cir. 2014). In that case, then-Circuit Judge Neil Gorsuch stated the unremarkable proposition that "an employee who needs a brief absence from work for medical care can often still discharge the essential functions of her job," and "allowing such a brief absence may sometimes amount to a (legally required) reasonable accommodation so the employee can proceed to discharge her essential job duties." *Id.* at 1162. However, the plaintiff in *Hwang*, who suffered from cancer, had already taken six months off work and was likely to need more time. The court noted that the plaintiff was suffering from "a terrible problem, one in no way of her own making, but it's a problem other forms of social security aim to address. The Rehabilitation Act seeks to prevent employers from callously denying reasonable accommodations that permit

otherwise qualified disabled persons to work—not to turn employers into safety net providers for those who cannot work." *Id.* I reach the same reluctant conclusion here.

The major problem with Plaintiff's case, and one that distinguishes it from all other cases she cites, is that her disability rendered her incapacitated for unknown periods of time (in the present situation, a duration of at least six weeks and up to two months prior to her termination), would recur at unpredictable times and without advanced notice, may or may not be effectively treated, interfered with her ability to even communicate with her employer concerning the need for leave, and made it impossible for her employer to work around her absences, particularly because no one else at CCH performed her work functions. I could not locate any precedent in this Circuit that would permit me to find Plaintiff was an otherwise qualified individual, based on her documented inability to regularly attend work on a going forward basis.

Defendant also argues Plaintiff failed to request a plausibly reasonable accommodation. I agree. As noted above concerning the FMLA interference claim, Plaintiff never requested leave at all. The most she did was acknowledge, in response to CCH's requests, that she knew she needed to submit medical documentation to qualify for additional FMLA leave, which she never did. Even if, under these facts, I could find something that constituted a request to accommodate, I cannot find any definition to what she would have been requesting, thus making it "not reasonable." The cases in this circuit are legion in requiring a request for leave as a reasonable accommodate to identify an "expected duration."[4] *E.g.*, *Winston v. Ross*, 725 F. App'x 659, 663 (10th Cir. 2018) ("[Plaintiff] provided no evidence as to when she expected her medical condition to improve to the point where she would be able to perform the essential functions of her job.");

---

[4] The other side of the "reasonable accommodation" coin is the proposition that an indefinite or unstated duration of leave constitutes an undue hardship on the employer especially where, as here, Plaintiff is the only person in the organization who carries out her job responsibilities.

*Punt*, 862 F.3d at 1051 ("'Without an expected duration of an impairment, an employer cannot determine whether an employee will be able to perform the essential functions of the job in the near future and therefore whether the leave request is a "reasonable" accommodation.'") (citation omitted); *Valdez v. McGill*, 462 F. App'x 814, 818 (10th Cir. 2012) ("[W]hen the employee seeks leave, but it is uncertain if or when he will be able to return to work, a leave of absence is not a reasonable accommodation."); *Boykin v. ATC/VanCom of Colorado, L.P.*, 247 F.3d 1061, 1065 (10th Cir. 2001) ("[E]mployers are not obligated to retain a disabled employee on unpaid leave indefinitely or for an excessive amount of time . . . ."); *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000), *overruled on other grounds by Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (employee's doctors indicated that the duration of her impairment was unknown); *Hudson v. MCI Telecommunications Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996) (employee "failed to present any evidence of the expected duration of her impairment as of the date of her termination").

As in *Murphy*, the Plaintiff's need for leave here was uncertain (in fact, unstated) as to any return date.  She was already well beyond the date her psychiatrist stated she could return to work. Again, I could not find any precedent in this circuit that would permit me to find Plaintiff made a request for reasonable accommodation, when any potential duration (or recurrence) of her need for leave existed only in a vague FMLA certification and was completely unaddressed by Plaintiff herself.

### III.   ADA/Rehab Act Wrongful Termination Claim

"To establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that (1) he is disabled within meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) his employer

terminated his employment under circumstances that give rise to an inference that the termination was based on his disability." *Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa Cty., Okla.*, 232 F. App'x 765, 770 (10th Cir. 2007). If a plaintiff establishes a prima facie case, the employer prevails if it proves a legitimate, nondiscriminatory reason for the termination, and if the employee cannot show a genuine issue of material fact as to whether the stated reason for termination is pretextual. *Hollis v. Aerotek, Inc.*, 667 F. App'x 725, 727 (10th Cir. 2016).

I have already concluded on this record that Plaintiff was not qualified to perform the duties of her job. I have also concluded that the record contains insufficient evidence of any other reason for the termination except violation of the CCH attendance policy. Thus, even if Plaintiff could prove a prima facie case of disability discrimination, she has produced no evidence that the stated reason for termination is pretextual. For this reason, I must grant summary judgment on the ADA/Rehabilitation Act discriminatory termination claim.

Plaintiff's final argument is that CCH violated its obligation to engage in the ADA interactive process in working to identify an accommodation for Plaintiff's disability. "[W]hen a disabled employee seeks an accommodation that will enable the employee to continue performing the essential functions of her job . . . [t]he ADA contemplates an affirmative obligation to undertake a good faith back-and-forth process between the employer and the employee, with the goal of identifying the employee's precise limitations and attempting to find a reasonable accommodation for those limitations." *Aubrey v. Koppes*, 975 F.3d 995, 1009 (10th Cir. 2020). I find no basis for this contention. As Plaintiff herself notes, she and Ms. Beck had literally dozens of communications during the relevant time period. When, as here, the employer repeatedly asks an employee to explain the need for leave, the employee agrees to provide an explanation, and the employee agrees to return to work but simply never does, there is insufficient evidence for a jury

to conclude the employer failed to engage in the interactive process. In this regard I agree with Defendant's reliance on *McFarland v. City & Cty. of Denver*, 744 F. Appx 583, 587 (10th Cir. 2018) (stating that breakdown in the interactive process was due to the employee's failure to communicate with her employer). Moreover, even if the Plaintiff could point to a failure by CCH, she still must demonstrate "a reasonable accommodation that would have enabled her to perform the essential functions of her job." *Aubrey*, 975 F.3d at 1009-10. Here, Plaintiff has utterly failed to submit evidence of any prospects for long-term attendance that would have complied with CCH's reasonable leave and attendance policy.

Therefore, summary judgment is required on Plaintiff's wrongful termination claim.

## CONCLUSION

Accordingly, for the foregoing reasons, CCH's Motion for Summary Judgment [filed August 31, 2020; ECF 26] is **granted**. The Court directs the Clerk of the Court to enter judgment in CCH's favor and to close this case.

Entered this 8th day of December, 2020, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge